UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. CECILIA GUARDIOLA,<br><br>Plaintiff,<br><br>v.<br><br>RENOWN HEALTH, et al,<br><br>Defendants. | Case No. 3:12-CV-0295-LRH (VPC)<br><br>ORDER |

Before the court is the request of relator Cecilia Guardiola ("Guardiola") for production of data for statistical sampling purposes (#75). Defendants, Renown Health, Renown Regional Medical Center, and Renown South Meadows Medical Center (collectively "Renown") responded (#77) and relator replied (#79). On August 13 and 14, 2014, this court held an evidentiary hearing. Thereafter, Renown filed a supplemental brief (#90, relator filed three supplemental briefs (#s 91, 92 & 93) and Renown filed a final supplemental brief (#94). However, in the interim, the District Court ruled on Renown's motions to dismiss (#s 87 & 95); therefore, many of the issues contested between the parties have now been resolved.

I. **Procedural History**

On June 1, 2012, Guardiola filed a *qui tam* complaint, and on January 10, 2014, she filed an amended *qui tam* complaint against Renown to recover damages resulting from Renown's knowing efforts to defraud government-funded health insurance programs, specifically Medicare (#s 1 & 17). Guardiola alleges that from July 2007 through March 2012, Renown knowingly submitted or, in reckless disregard of the truth, allowed to be submitted, short-stay inpatient claims ("zero-day stays" and "one-day stays") that should have been billed as outpatient claims. Guardiola's amended complaint sets out in detail the basis for her claim that Renown engaged in fraudulent billing practices. Renown hired Guardiola as its director of clinical documentation in June 2009, but after attempting to rectify what she perceived to be fraudulent billing practices, she resigned in January 2012.

In February 2014, Renown filed a motion to dismiss Guardiola's amended complaint for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b) (#28), and in April 2014, it filed a second motion to dismiss for lack of subject matter jurisdiction for claims arising before March 23, 2010 (#48). The District Court denied these motions in August and October 2014, respectively (#s 87 & 95).

In the interim this court held a case management conference on April 7, 2014, ordered bifurcated discovery, and directed the parties to confer about possible statistical sampling and the scope of discovery in the case (#45). In May 2014, the parties submitted briefs to address the scope of discovery, particularly as it concerns the time period and medical specialties at issue (#s 54, 63 & 65). In June 2014, Renown produced data for one-day stay admissions between June 2008 and January 2012 for cardiac care and Da Vinci-assisted OB/GYN cases. Renown then produced information about the dates claims were made for payment, the amount of the claim and amount paid, and information about procedure codes (#77, Ex. E). In response, Guardiola filed a brief and argued that Guardiola needs all available data to develop a statistical sampling plan (#79).

At the June 2014 case management conference, the court set a briefing schedule and an evidentiary hearing at which the parties statistical experts would testify (#70). That hearing was held on August 13 and 14, and the parties filed supplemental briefs, as noted above.

II.     **Discussion and Analysis**

The parties ask the court to decide two issues:

1.     Whether the court should order Renown to produce Medicare patient data needed for Guardiola to develop a statistical sampling plan?

2.     If sampling is ordered, what is the proper time period and scope for the sampling plan?

The District Court settled the scope of discoverable patient data by denying Renown's Rule 12(b)(6) motion to dismiss, as the Court held that "Guardiola has sufficiently alleged that Renown had actual knowledge of the fraud, or, at a minimum, acted in deliberate ignorance of,

or in reckless disregard of, the falsity of inpatient claims (#87). Further, the District Court found that "Guardiola has plausibly alleged that Renown knowingly billed Medicare for inpatient claims that should have been billed as outpatient claims," and that she satisfied Fed.R.Civ.P. 9(b)'s heightened pleading standard. *Id.*

    A.    **A Statistical Sampling Plan**

Having carefully considered the testimony of the Dr. Yiannoustsos and Dr. Salve and the arguments of counsel, the court finds that a statistical sampling plan is proper in this case. This discovery is permissible pursuant to Fed.R.Civ.P. 26(b), it will insure thoroughness and transparency of the data universe, and it will result in the development of a valid and reliable statistical sampling plan. Ultimately, production of all of the data will result in more cost effective litigation. This case is in the discovery phase, and a ruling on the admissibility or use of statistical sampling will no doubt be debated later at the pre-trial stage of this case. The court adopts Guardiola's proposed criteria to yield the appropriate universe of claims in this case:

| | FILTERING CRITERIA TO BE APPLIED | |
|---|---|---|
| **Data Field** | **Zero Day Stays Field Value** | **Elective Surgical Claims Field Value** |
| Length of Stay | < 24 hours | 0-1 |
| Insurance | Medicare | Medicare |
| IP/OP | IP | IP |
| Admit Date/Time | 6/1/06 – 6/30/14 | 6/1/06 – 6/30/14 |
| DRG | Any DRG | 225, 227, 243, 244, 245, 247, 249, 251, 252, 253, 254, 259, 262, 264, 265, 287, 478, 479, 491, 517, 583, 585, 626, 627, 741, 743, 747 and 748 |
| Disposition Code | Routine/Home | Routine/Home |
| ER | Any Code | No |

This criteria specifically identifies 28 Diagnosis-Related Groups ("DRGs"), out of close to 500 DRGs, that are most likely to encompass the elective surgical procedures which are the subject of Guardiola's allegations. These 28 DRGs (16 Cardiac, 6 OB/GYN, 4 Spine and 2 Thyroid) are narrowly limited to Guardiola's allegations and can be described as:

| DRG | Specialty | Description |
| --- | --- | --- |
| 225 | Cardiac | Card Defib Impl w/Cardiac Cath w/o AMI/HF/Shock w/o Major Complication or Comorbidity ("MCC") |
| 227 | Cardiac | Card Defib Implant w/o Cardiac Cath w/o MCC |
| 243 | Cardiac | Permanent Cardiac Pacemaker Implant w/ Complication or Comorbidity ("CC") |
| 244 | Cardiac | Permanent Cardiac Pacemaker Impl w/o CC/MCC |
| 245 | Cardiac | AICD Generator Procedures |
| 247 | Cardiac | Percutaneous Cardiovascular Procedure w/ Drug Eluting Stent w/o MCC |
| 249 | Cardiac | Percutaneous Cardiovascular Procedure w/ Non Drug Eluting Stent w/o MCC |
| 251 | Cardiac | Percutaneous Cardiovascular Procedure w/o Coronary Artery Stent w/o MCC |
| 252 | Cardiac | Other Vascular Procedures w/ MCC |
| 253 | Cardiac | Other Vascular Procedures w/ CC |
| 254 | Cardiac | Other Vascular Procedures w/o CC/MCC |
| 259 | Cardiac | Cardiac Pacemaker Device Replacement w/o MCC |
| 262 | Cardiac | Cardiac Pacemaker Revision Except Device Replacement w/o CC/MCC |
| 264 | Cardiac | Other Circulatory System O.R. Procedures |
| 265 | Cardiac | AICD Lead Procedures |

| | | |
|---|---|---|
| 287 | Cardiac | Circulatory Disorders Except Acute Myocardial Infarction, w/ Cardiac Catheterization w/o MCC |
| 478 | Spine | Biopsies of Musculoskeletal System and Connective Tissue w/ CC |
| 479 | Spine | Biopsies of Musuculoskeletal System and Connective Tissue w/o CC/MCC |
| 491 | Spine | Back and Neck Procedures Except Spinal Fusions w/o CC/MCC |
| 517 | Spine | Other Musculoskeletal System and Connective Tissue O.R. Procedure w/o CC/MCC |
| 583 | OB/GYN | Mastectomy for Malignancy w/o CC/MCC |
| 585 | OB/GYN | Breast Biopsy, Local Excision and Other Breast Procedure w/o CC/MCC |
| 626 | Thyroid | Thyroid, Parathyroid & Thyrogloss Proc w/ CC |
| 627 | Thyroid | Thyroid, Parathyroid & Thyrogloss Proc w/o CC/MCC |
| 741 | OB/GYN | Uter, Adnxa Proc Non-Ovrin/Adxal Malig w/o CC/MCC |
| 743 | OB/GYN | Uter, Adnxa Proc Non-Ovrin/Adxal Malig w/o CC/MCC |
| 747 | OB/GYN | Vagina, Cervix and Vulva Procedures w/o CC/MCC |
| 748 | OB/GYN | Female Reproductive System Reconstructive Procedures |

### B. The Time Period for the Statistical Sampling Plan

Guardiola filed her complaint under seal in 2012, and she contends that the False Claims Act's statute of limitations extends to fraudulent conduct dating back to 2006. 31 U.S.C. § 3731(b)(1). Based upon this argument, Guardiola contends the period of allegedly fraudulent conduct should span from June 1, 2006 to June 30, 2014 (#17, ¶ 72). However, Renown's view is that statistical sampling should not exceed the time period of June 2008 (one year before

Guiardiola came to work for Renown) until March 2011. In light of the District's Court's order denying Renown's motion to dismiss (#87), the court is not persuaded that the scope of discovery should be limited to the period Renown proposes. At the court noted in *U.S. ex rel. Fiederer v. Healing Hearts Home Care, Inc.*, 2014 WL 4666531 at *5 -*6, "[l]imiting a relator's discovery rights to the duration of her employment would weaken the [False Claim] Act by placing limits on qui tam actions that do not exist for government-initiated actions. Additionally, it would dissuade whistleblowing by limiting a relator's claim, not to the plausible allegations regarding the submissions of false claims -- but to the duration of the relator's employment, on which the Act is silent." The court concludes that because Guardiola filed her lawsuit on June 1, 2012, she is entitled to seek recovery on behalf of the United States for alleged false claims made from June 1, 2006 to June 30, 2014.

### III. Conclusion

Based upon the foregoing, IT IS THEREFORE ORDERED:

1. Renown shall provide data for all Medicare inpatient admissions at Renown that reflect (1) any "one-day stay" that involved a surgical procedure within the four specialties -- cardiology, OB/GYN, thyroid, and spine -- and (2) any "zero-day stay;"

2. The sampling period will be from June 1, 2006 through June 30, 2014; and

3. The parties shall submit an amended discovery plan and scheduling order consistent with this order.

**IT IS SO ORDERED.**

Dated November 4, 2014.

_____
UNITED STATES MAGISTRATE JUDGE